FILED
U.S. DISTRICT COURT
2006 MAR 28 P 12:57
DISTRICT OF UTAH
BY: DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | | |
|---|---|---|
| ANTHONY V. FAIL and MARA C. HUSSAIN, Plaintiffs, | ) | Case No. 2:04-CV-1094 PGC |
| v. | ) | |
| WEST VALLEY CITY et al., Defendants. | ) | O R D E R |

Plaintiffs, Anthony V. Fail and Mara C. Hussain, husband and wife, filed this *pro se* civil rights suit under 42 U.S.C. § 1983. *See* 42 U.S.C.S. § 1983 (2005). Mr. Fail was incarcerated at the Central Utah Correctional Facility when the original Complaint was filed, he has since been released. Plaintiffs' motion to proceed *in forma pauperis* under 28 U.S.C. § 1915 was granted. The Amended Complaint is now before the Court for screening under 28 U.S.C. § 1915(e). *See* 28 *id.* § 1915(e).

**ANALYSIS**

**I. Screening Standard of Review**

Under 28 U.S.C. § 1915(e)(2)(B), a court shall dismiss any claims in a complaint filed *in forma pauperis* if they are frivolous, malicious or fail to state a claim upon which relief may be granted. *Id.* "Dismissal of a pro se complaint for failure to state a claim is proper only where it is obvious that

the plaintiff cannot prevail on the facts he has alleged and it would be futile to give him an opportunity to amend." *Perkins v. Kan. Dep't of Corr.*, 165 F.3d 803, 806 (10th Cir. 1999).

When reviewing the sufficiency of a complaint the Court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). Because Plaintiff is proceeding pro se the Court must also construe his pleadings liberally and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Id.* at 1110. However, "[t]he broad reading of the plaintiff's complaint does not relieve [him] of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Id.*

## II. Alleged Facts

Plaintiffs' Amended Complaint[1] alleges that Defendants illegally searched Plaintiffs' home, used excessive force against them, and seized or destroyed their property pursuant to an invalid search warrant, in violation of the Fourth Amendment. Specifically, Plaintiffs allege that on the evening of February

[1] The facts summarized here are drawn from both the original Complaint and Amended Complaint. Although these two documents present slightly different versions of events, the Court has attempted to reconcile the two accounts as much as possible. Any inconsistencies are viewed in the light most favorable to Plaintiffs.

9, 2001, officers from the West Valley City Police Department, and other municipal agencies, forcibly entered Plaintiffs' home by breaking down the front and rear doors while Plaintiffs were eating dinner. The officers also used percussion grenades during their entry, causing flying glass and extensive property damage. Plaintiffs were allegedly forced to the floor and restrained with excessive force. Although the officers stated that they were conducting a lawful search for a clandestine methamphetamine lab, they did not immediately produce a search warrant. After Plaintiffs were handcuffed, certain unnamed officers led Plaintiffs around the house at gunpoint and asked them questions, while other officers continued to search the house. During the search Plaintiffs were temporarily separated from their eleven-month-old son.

Although no evidence of a meth lab or other contraband was ultimately found, Plaintiffs allege that the officers briefly seized Plaintiffs' automobile and used it to haul off various items of personal property, including tools, a personal computer and papers. The officers stated that they were taking the property to determine whether any of it was stolen. Plaintiffs' automobile was returned within a few hours, however, certain items of personal property were permanently confiscated. After searching for several hours all the officers finally exited the house, leaving Plaintiffs handcuffed in the living room. About

ten minutes later Defendant Reed returned and removed the handcuffs. He then told Plaintiffs that a copy of the search warrant was posted on the refrigerator, he also warned Plaintiffs not to have any more trouble with the authorities or they could be arrested and their child could be taken away.

Upon inspection of the document left on the refrigerator Plaintiffs noted that it did not appear to be a valid search warrant.[2] Plaintiffs allege that the document was not completely filled out; although it listed Plaintiffs' address as the premises to be searched, the portion of the form describing the items to be seized was left blank. In addition, Plaintiffs state that the document did not "carry a magistrates [sic] wet ink signature." (Compl. 6)

Plaintiffs' Amended Complaint names West Valley City as the principal defendant in this case; it also names two individual police officers as defendants, Patrick McLenon and Eric Reed, presumably in both their personal and official capacities. Although the Amended Complaint also names the West Valley City Police Department as a separate defendant, the Department is not a separate legal entity with the capacity to sue or be sued. *See Whayne v. State of Kansas*, 980 F. Supp. 387, 391 (D. Kan. 1997) (subunit of city government is not itself a governmental entity

---

[2] Plaintiffs did not include a copy of the purported search warrant with their Amended Complaint, however, they do claim to have the document in their possession.

subject to suit); *see also Dean v. Barber*, 951 F.2d 1210, 1214 (11th Cir. 1992)(Sheriff's departments and police departments are not usually considered legal entities subject to suit under § 1983). Plaintiffs seek $25,000.00 in compensatory damages for the loss or destruction of their property, they also request $1,000,000.00 in punitive damages.

## III. Legal Standard

### A. Search and Seizure

The Fourth Amendment guarantees the right of the people to be secure against unreasonable searches and seizures. U.S. Const. Amend. IV; *Soldal v. Cook County, Ill.*, 506 U.S. 56, 62, 113 S. Ct. 538 (1992). To be constitutionally valid under the Fourth Amendment, a search must be reasonable. That is, it must be conducted pursuant to a valid search warrant and executed in accordance with Fourth Amendment principles. For a valid warrant to issue, it must appear from the affidavits supporting the application for the warrant that "there is probable cause to believe that an offense has been committed and that the defendant has committed it." Fed. R. Crim. P. 4; *Salmon v. Schwarz*, 948 F.2d 1131, 1136 (10th Cir. 1991). "The Fourth Amendment requires only that the warrant contain probable cause supported by an oath or affirmation and a particular description of the place, persons, and things to be searched and seized." *United States v. Green*, 178 F.3d 1099, 1106 (10th Cir. 1999).

The Fourth Amendment generally requires that police officers entering a home must knock on the door and announce their identity and purpose before attempting forcible entry. *See Richards v. Wisconsin*, 520 U.S. 385, 387 (1997); *see also* 18 U.S.C. § 3109. The presumption in favor of announcement, however, gives way when exigent circumstances exist. *See United States v. Gay*, 240 F.3d 1222, 1228 (10th Cir.2001). "In order to justify a 'no-knock' entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997), quoted in *Gay*, 240 F.3d at 1228. "This showing is not high, but the police should be required to make it whenever the reasonableness of a no-knock entry is challenged." *Richards*, 520 U.S. at 394. Similarly, where a judge issues a no-knock search warrant, that judge must determine whether the affidavit supporting the warrant request sufficiently describes exigent circumstances that would justify a no-knock warrant. *See United States v. Thigpen*, No. 91-1128, 1992 WL 252453, at *3 (10th Cir. Sept. 29, 1992).

B. Qualified Immunity

Qualified immunity protects state actors from liability when acting within the scope of their employment. "[G]overnment

officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727, 2247 (1982). The doctrine of qualified immunity serves the goals of protecting public officials "who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Butz v. Economou*, 438 U.S. 478, 506, 98 S. Ct. 2894, 2911 (1978). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001)(quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)). Thus, immunity questions should be addressed at the earliest possible stage in litigation. *Id.* (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)(per curiam)).

## IV. Sufficiency of Plaintiffs' Allegations

### A. Legal Standard for Individual Capacity Claims

To prevail against an individual under § 1983, on the grounds that they falsely obtained or executed a search warrant, a plaintiff must establish that the defendant "acted under color

of state law and caused or contributed to the alleged violation." *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). The plaintiff "must show the defendant personally participated in the alleged violation . . . it is not enough for a plaintiff merely to show a defendant was in charge of other state actors who actually committed the violation." *Id.* Instead, a plaintiff must establish "a deliberate, intentional act by the supervisor to violate constitutional rights." *Id.* at 994-95. This standard may be satisfied by a showing that a "defendant-supervisor personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Id.*

When deciding whether a police officer who applied for a search warrant is entitled to qualified immunity, the Court must determine "whether a reasonably well-trained police officer in [the officer's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." *Malley v. Briggs*, 475 U.S. 335, 345, 106 S. Ct. 1092, 1098 (1986). In deciding whether the officer should have known his affidavit failed to establish probable cause, the Court must also make an "objective reasonableness" assessment of whether "a reasonable person would have known that his conduct 'violates clearly established statutory or constitutional rights.'" *Salmon v. Schwarz*, 948 F.2d 1131, 1135 (10th Cir. 1991) (quoting *Burns v. Reed*, 500 U.S. 478, 490, 111

S. Ct. 1934, 1944, (1991)).

In determining the reasonableness of an officer's actions when the officer executes a search warrant secured by another officer, the standard becomes one of good faith. An officer without knowledge of the facts underlying the search warrant is entitled, when executing the warrant, to rely on its validity. *Salmon*, 948 F.2d at 1141; *Morris v. County of Tehama*, 795 F.2d 791, 795 (9th Cir. 1986). So long as the officer reasonably believed his actions to be lawful, he is protected by qualified immunity. *Salmon*, 948 F.2d at 1141.

B. Allegations Against Individual Defendants

Detective Eric Reed and Sergeant Patrick McLenon are the only individual defendants named in Plaintiffs' Amended Complaint. Although Plaintiffs generally allege that Reed and McLenon "executed an illegal home invasion," "endangered . . . the lives of Plaintiffs [and their son]," and "seized multiple papers and effects . . . without legal or just cause," there are no specific factual allegations in the Amended Complaint directly linking these officers to such acts. (Am. Compl. 3)

Plaintiffs do not allege that Reed or McLenon were directly responsible for obtaining the allegedly defective search warrant. There are no allegations showing that Reed or McLenon participated in drafting the warrant or supporting affidavits,

nor does it appear that either officer supplied information on which the warrant relied. In addition, even assuming that Defendants somehow participated in seeking the warrant, and that the warrant was not supported by probable cause, Defendants would still be entitled to qualified immunity unless their actions were shown to be objectively unreasonable. Because Plaintiffs do not allege that Reed or McLenon participated in obtaining the warrant challenged here, much less that they acted unreasonably in doing so, the Court concludes that neither Reed nor McLenon can be held personally liable for the allegedly defective search warrant.

Plaintiffs also fail to allege specific facts showing that Reed or McLenon helped execute the warrant in bad faith. Plaintiffs' allegations do not support the conclusion that Reed or McLenon knew the warrant they were executing was defective. Plaintiffs' only factual allegation supporting this conclusion is their assertion that the copy of the warrant left by Reed following the search appeared to be incomplete. However, Plaintiffs have not only failed to provide a copy of that document, their assertion that the officers knew the warrant was blatantly incomplete is undermined by statements allegedly made by Defendants during the search. The Amended Complaint alleges that during the search the officers stated that they were executing a warrant; it also alleges that Reed and McLenon "both declared verbally and in written documentation that their

authority to perform the [search and seizure] . . . was performed under the authority and order of West Valley Municipal City." (Am. Compl. 2) Thus, the facts alleged by Plaintiffs show that Reed and McLenon subjectively believed their actions were lawful, even if the copy of the warrant left by Reed following the search was incomplete. Based on these facts it appears that Reed and McLenon acted in good faith and are entitled to qualified immunity with regard to their participation in executing the search.

Regarding Plaintiffs' claims of excessive force and unreasonable seizure of Plaintiffs and their property, the alleged facts do not show that Reed or McLenon personally participated in any unconstitutional conduct. Neither Reed nor McLenon is directly linked to the alleged use of excessive force against Plaintiffs, or to the destruction or confiscation of their property. Plaintiffs do not identify Reed or McLenon as the individuals who threw Plaintiffs to the floor, detonated the percussion grenades, led Plaintiffs around the house at gunpoint, or exposed Plaintiffs to the cold. Although Plaintiffs state that these defendants helped seize property which was never returned, as previously discussed, the seizure was in execution of a warrant which, based on the facts alleged, Defendants reasonably believed was valid.

Finally, there is no indication that Reed or McLenon

supervised or directed any aspect of obtaining or executing the warrant in this case. Although their official titles suggest that they may have out-ranked other officers involved, that alone does not support the conclusion that Reed or McLenon had authority to intervene. Furthermore, even if Reed or McLenon did play a supervisory role here, that alone is not enough to hold them personally liable. Plaintiffs would still be required to allege specific facts showing that Reed or McLenon "personally directed the violation or had actual knowledge of the violation and acquiesced in its continuance." *Jenkins*, 81 F.3d at 994. Plaintiffs' allegations do not support such a finding in this case.

Based on the foregoing the Court concludes that Plaintiffs' Amended Complaint fails to state a claim under the Fourth Amendment against Reed or McLenon in their individual capacities.

C. Allegations Against Officials and West Valley City

A suit against a municipal officer in his official capacity is simply "'another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. Department of Social Services*, 436 U.S. 658, 690 n. 55 (1978)). An official capacity suit is functionally equivalent to a direct suit against the municipality, for it is the municipality that is the "real party in interest" and to which the plaintiff must look in recovering

damages. *Kentucky*, 473 U.S. at 166. "When the municipality is sued along with the municipal officer in his official capacity, the suit against the officer is redundant, improper, and unnecessary and should be dismissed." *Gallardo v. Board of County Com'rs,* 1995 WL 106366, *2 (D. Kan. 1995).

A municipality may not be held liable under 42 U.S.C. § 1983 under a theory of respondeat superior. *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2051 (1978). Therefore, municipal liability may not be premised upon the employment of a person who has violated a plaintiff's federally protected rights. *Id.* Instead, a municipal wrong is one resulting from the enforcement of a municipal policy or custom. *Id.* As such, to establish municipal liability, "a plaintiff must show (1) the existence of a municipal custom or policy and (2) a direct causal link between the custom or policy and the violation alleged." *Jenkins v. Wood*, 81 F.3d 988, 993-94 (10th Cir.1996) (citing *City of Canton v. Harris*, 489 U.S. 378, 385, 109 S. Ct. 1197, 1205 (1989)).

Plaintiffs have not satisfied this standard with regard to West Valley City. Plaintiffs do not assert that the allegedly wrongful search and seizure was directly pursuant to a municipal custom or policy; nor have they shown that any municipal custom or policy led to the violations alleged here. In fact, the limited allegations here support the conclusion that the

allegedly incomplete search warrant may have resulted from mere inadvertence, or even a clerical mistake. In addition, Plaintiffs' allegations of excessive force and unreasonable seizure appear to be merely unauthorized actions on the part of unnamed individuals, rather than the result of any municipal custom or policy. Thus, the Court concludes that Plaintiffs' allegations against West Valley City, or against city employees in their official capacities, fail to state a claim on which relief can be granted.

**CONCLUSION**

The allegations presented in Plaintiffs' Amended Complaint are not sufficient to state a claim for relief against any of the named defendants. The facts alleged do not support the conclusion that either of the individual defendants were personally responsible for violating Plaintiffs' civil rights. In addition, it appears that both individuals are entitled to qualified immunity against Plaintiffs' claims. Regarding the municipal defendants, West Valley City Police Department is not a proper defendant, and Plaintiffs have not alleged an official custom or policy linking West Valley City to any constitutional violation.

Accordingly, **IT IS HEREBY ORDERED** that Plaintiffs' Amended Complaint is **dismissed** for failure to state a claim on which

relief can be granted. *See* 28 U.S.C.S. § 1915(e)(2)(B)(ii) (2005).

The Clerk of the Court is directed to close this case.

DATED this 28th day of March, 2006.

BY THE COURT:

Paul G. Cassell
United States District Judge